**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

| | |
|---|---|
| LOWELL LINDER,              ) | |
| )   | |
| Plaintiff,          ) | |
| )   | CIVIL ACTION FILE NO.: |
| v.                          ) | |
| )   | **JURY TRIAL REQUESTED** |
| ACCESS PRO MEDICAL, LLC,    ) | |
| )   | |
| Defendant.         ) | |

**COMPLAINT**

Plaintiff, Lowell Linder (hereinafter "Plaintiff" or "Mr. Linder"), files this Complaint against Defendant, Access Pro Medical, LLC ("Defendant" or "APM"), alleging as follows:

**INTRODUCTION**

1. This is an employment case arising from Defendant's discrimination against Plaintiff because of his sex and age.

2. Mr. Linder was formerly employed by Defendant as a sales representative.

3. Mr. Linder is a forty-nine (49) year old male.

4. Mr. Linder asserts discrimination claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII") and the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq* ("ADEA"). Mr. Linder seeks injunctive and declaratory relief, back pay and lost benefits, front pay in lieu of reinstatement to a full-time position with commensurate benefits, liquidated damages, compensatory and punitive damages, and attorneys' fees and costs of litigation.

1

## JURISDICTION AND VENUE

5. Jurisdiction of this court is invoked pursuant to 42 U.S.C. §2000(e)-5(f)(3), 28 U.S.C. §1331 (federal question), 28 U.S.C. §1343 (civil rights), and 29 U.S.C. §626(c)(1).

6. Venue is proper in this Court, pursuant to 28 U.S.C. §1391(b)(1)-(2), (c)(2), and (d), as every act of which Mr. Linder complains occurred in the Augusta Division of the United States District Court for the Southern District of Georgia and as Defendant resides within the Augusta Division of the United States District Court for the Southern District of Georgia, within the meaning of 28 U.S.C. §1391(c)(2) and (d).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff satisfied all administrative prerequisites to perfect his claims under Title VII and the ADEA. Specifically, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued a notice of right to sue.

8. Plaintiff brings this suit within ninety (90) days of receipt of his notice of right to sue.

## THE PARTIES

9. Mr. Linder is a citizen of the United States and resides in the Southern District of Georgia.

10. Mr. Linder was an "employee" of Defendant within the meaning of Title VII and the ADEA.

11. Defendant is a Georgia limited liability company, with its principal office at 804 Scott Nixon Memorial Drive, Augusta, Georgia 30907. Defendant is registered and authorized to do business in the State of Georgia, maintains offices within the Southern District of Georgia, regularly conducts business within the Southern District of Georgia, is subject to the jurisdiction

of this Court, and may be served with process by service upon its registered agent, Christopher Calvert, at 804 Scott Nixon Memorial Drive, Augusta, Georgia 30907.

12. Defendant is an "employer" within the meaning of Title VII and the ADEA, 29 U.S.C. § 630.

13. Defendant is a covered employer under Title VII and the ADEA.

## STATEMENT OF FACTS

14. Mr. Linder was employed as a sales representative by APM from October 1, 2019 until he was unlawfully terminated on August 31, 2021. During this time, Mr. Linder worked primarily in Augusta, Georgia, handling sales of medical supplies to clinicians in the Augusta area.

15. Mr. Linder was not a supervisor of any other persons that APM employed.

16. Mr. Linder is an experienced sales professional, who has spent much of his career in sales of medical devices and/or supplies. Mr. Linder's sales performance with APM was strong. Mr. Linder sold approximately $2.5M in product on behalf of APM and was told by his immediate supervisor, approximately one month before his termination, that he would soon receive a promotion and a raise.

17. Mr. Linder was forty-seven (47) years old at the time of his termination.

### *Ms. Mullins engages in voluntary physical contact with Mr. Linder*

18. During the summer of 2021, APM tasked Mr. Linder with assisting a co-worker, Mary Blake Mullins ("Ms. Mullins") with her sales due to her under performance.

19. On July 28, 2021, Mr. Linder was in Charleston, South Carolina to assist Ms. Mullins with sales of APM's products.

20. At the time, Ms. Mullins told Mr. Linder that she was twenty-nine years old. In filings before the EEOC, APM has represented that she was twenty-five years old at the time.

21. During one of their meetings on July 28, 2021, Ms. Mullins asked Mr. Linder to attend a dinner meeting that she had arranged with some prospective clients that evening. Mr. Linder agreed to attend and assist her with the dinner meeting.

22. When the time of the dinner arrived, the prospective clients, if any ever existed, never appeared. This meant that Ms. Mullins and Mr. Linder were left to eat dinner only with one another.

23. After Ms. Mullins and Mr. Linder ate dinner, Ms. Mullins offered to give Mr. Linder a tour of Charleston.

24. Ms. Mullins and Mr. Linder went to Ms. Mullins' apartment complex and retrieved a golf cart, but at the time, they did not go inside.

25. Ms. Mullins drove Mr. Linder around the city for a while, and after they returned, Ms. Mullins invited Mr. Linder into her apartment.

26. Once inside the apartment, Ms. Mullins told Mr. Linder that she had a crush on him and had felt that way for quite some time.

27. Ms. Mullins then began to kiss Mr. Linder and touched the outside of his pants near and on top of his genitals.

28. At that point, Ms. Mullins and Mr. Linder decided that things should not go any further, and the physical contact ended.

29. Shortly afterward, Ms. Mullins walked Mr. Linder out of the apartment complex, and he returned to his hotel.

30. Ms. Mullins and Mr. Linder were two consenting adults. Mr. Linder was not Ms. Mullins' supervisor, and APM had no policies prohibiting such contact between them.

31.     All physical contact between Ms. Mullins and Mr. Linder was initiated by Ms. Mullins, who was a willing and voluntary participant in those activities. Mr. Linder never engaged in any form of physical contact with Ms. Mullins against her wishes.

***Ms. Mullins and/or her father make false accusations to APM about Mr. Linder, and APM terminates Mr. Linder's employment without reasonable investigation of the claims***

32.     On August 30, 2021, Mr. Linder received a call from Frank Mullins ("Mr. Mullins"), who was the owner and/or Chief Executive Officer of one of APM's largest customers and the father of Ms. Mullins.

33.     During the call, Mr. Mullins said Ms. Mullins had just told him that Mr. Linder had forced his way inside her apartment, which was entirely untrue. Mr. Mullins threatened Mr. Linder physically and suggested that he may have Mr. Linder fired.

34.     Chris Calvert ("Mr. Calvert") is, and at the time was, the President, Chief Executive Officer, and/or owner of APM. At the time, Mr. Calvert was also Mr. Linder's direct supervisor.

35.     On or about August 30, 2021, Mr. Mullins and Ms. Mullins spoke with Mr. Calvert about the events in Charleston, South Carolina and falsely reported to Mr. Calvert that Mr. Linder had sexually harassed and/or sexually assaulted Ms. Mullins on or about July 28, 2021 while in Charleston.

36.     Mr. Mullins and/or Ms. Mullins falsely suggested to Mr. Calvert that Mr. Linder, rather than Ms. Mullins, had arranged the purported business dinner, on or about July 28, 2021, at which no prospective clients appeared.

37.     Mr. Mullins and/or Ms. Mullins falsely told Mr. Calvert that Mr. Linder, rather than Ms. Mullins, initiated the kiss between Mr. Linder and Ms. Mullins.

38.     Mr. Mullins and/or Ms. Mullins falsely told Mr. Calvert that, following or during the kiss, Mr. Linder attempted to pull Ms. Mullins' dress off against her will. This statement was

an untruthful fabrication with no basis whatsoever in fact; Mr. Linder never attempted to remove Ms. Mullins' dress.

39. Later on August 30, 2021, Mr. Linder received a call from Mr. Calvert.

40. When Mr. Calvert and Mr. Linder spoke, Mr. Calvert asked Mr. Linder what had happened with Ms. Mullins and told Mr. Linder, referring to Mr. Mullins, "Frank isn't having it."

41. Mr. Linder told Mr. Calvert what had happened in Charleston and explained to Mr. Calvert that he had not forced his way into Ms. Mullins' apartment or done anything against Ms. Mullins' will, except that he broke off their interaction after she kissed him, rather than going further.

42. Mr. Linder also told Mr. Calvert that Ms. Mullins' apartment complex was equipped with cameras that would show that he had not forced his way into Ms. Mullins' apartment and that their interaction was not tense or hostile when he departed the apartment complex.

43. Mr. Calvert failed to reasonably investigate Ms. Mullins' false allegations against Mr. Linder. Instead, Mr. Calvert accepted Ms. Mullins' version of events because of Ms. Mullins' and Mr. Linder's sexes and/or the differences in their ages.

44. On August 31, 2021, Mr. Linder's employment with APM was terminated at Mr. Calvert's direction.

45. On August 31, 2021, during a meeting between Mr. Linder, Mr. Calvert, and Greg Yager about the termination of Mr. Linder's employment, Mr. Calvert made clear that Mr. Linder's sex contributed to Defendant's termination decision, when Mr. Calvert said, "Let's call it what it is. In this day and age, you turn on the news, what guy wins this battle, ever? I mean, none. None."

46. Several days after terminating Mr. Linder's employment, Mr. Calvert told one of Mr. Linder's former clients, Dr. Justin Bundy, that APM fired Mr. Linder because there were

6

allegations against him with "a client's daughter" (referring to Ms. Mullins), that there was video evidence against Mr. Linder (which is not true), that she (Ms. Mullins) was twenty-five while Mr. Linder was in his forties, and that it "doesn't look good for a male" like Mr. Linder.

47. Mr. Calvert's statements to Dr. Bundy suggest that APM considered not only Mr. Linder's sex but also his age when terminating Mr. Linder's employment.

## COUNT ONE
## SEX DISCRIMINATION IN VOLATION OF TITLE VII

48. Paragraphs 1 through 47 are hereby incorporated as though each of the factual allegations is restated herein.

49. At all times relevant to Mr. Linder's claims in this action, Defendant employed more than twenty employees. Accordingly, Defendant is covered by and required to comply with Title VII.

50. At the time of his termination, Mr. Linder was an employee protected by Title VII.

51. The above-pled discriminatory conduct toward Mr. Linder, including, but not limited to, Defendant's discriminatory discharge of Mr. Linder based on sex constitute unlawful sex discrimination against Mr. Linder in the terms and conditions of his employment in violation of Title VII.

52. Defendant violated Mr. Linder's rights under Title VII by terminating his employment because of his sex.

53. Defendant violated Mr. Linder's right to be free from sex discrimination in employment via the actions of Mr. Calvert, who made the decision to terminate Mr. Linder's employment.

54. Mr. Linder's sex was a "contributing factor" in Defendant's decision to terminate his employment, even if there are legitimate non-discriminatory reasons that also motivated Defendant's actions.

55. Mr. Calvert's above-described comments during the August 31, 2021 meeting with Mr. Linder, to the effect that no man wins in the situation that Mr. Linder faced, are evidence that Mr. Linder's sex was at least a "contributing factor" in Defendant's decision to terminate Mr. Linder's employment.

56. Defendant's above-pled discriminatory conduct toward Mr. Linder constitutes sex discrimination in violation of Title VII.

57. Defendant undertook its conduct intentionally and maliciously with respect to Mr. Linder and his federally protected rights, or additionally, and in the alternative, undertook its conduct recklessly with respect to Mr. Linder and his federally protected rights, entitling Mr. Linder to recover compensatory and punitive damages against Defendant.

58. Defendant's conduct described above has directly and proximately caused, and continues to cause, Mr. Linder to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, pain and suffering, humiliation, personal embarrassment, and damage to his professional reputation.

59. As a direct and proximate result of Defendant's violations of Title VII, Mr. Linder has suffered damages including lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

60. Mr. Linder is entitled to an award of back pay and benefits, compensatory damages, attorney's fees and costs, and punitive damages, as well as front pay and other equitable relief, and

all other legal and equitable relief provided for by Title VII and all statutes providing for relief for violations of Title VII.

## COUNT TWO
## AGE DISCRIMINATION IN VOLATION OF THE ADEA

61.     Paragraphs 1 through 47 are hereby incorporated as though each of the factual allegations is restated herein.

62.     At all times relevant to Mr. Linder's claims in this action, Defendant employed more than twenty employees. Accordingly, Defendant is covered by and required to comply with the ADEA.

63.     At the time of his termination, Mr. Linder was 47 years old and, at all relevant times, was an employee protected by the ADEA.

64.     At the time of his termination, Mr. Linder was more than qualified for the position he held, having performed the same or similar positions over the course of his career.

65.     Mr. Linder's supervisor, Mr. Calvert, harbored a discriminatory animus toward older males who engaged in romantic contact or relationships with younger adult women.

66.     Mr. Calvert and APM discriminated against Mr. Linder in violation of the ADEA by taking adverse action against him, including, but not limited to, terminating his employment.

67.     Mr. Linder was replaced by, or alternatively his job duties were given to, a younger individual or individuals outside of his protected class.

68.     In terminating Mr. Linder's employment, Defendant knowingly and intentionally discriminated against him on account of his age.

69.     In taking these adverse actions against Mr. Linder, Defendant unlawfully discriminated against him on the basis of his age in violation of the ADEA.

70. Mr. Linder is entitled to an award of back pay and benefits, front pay, liquidated damages, injunctive relief, attorneys' fees and costs, and all other appropriate damages, remedies and other relief available under the ADEA and all federal statutes providing remedies for violations of the ADEA.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Linder demands a TRIAL BY JURY and that the following relief be granted:

A. That this court take jurisdiction of this matter;

B. That process be served;

C. That Mr. Linder be awarded a declaratory judgment that Defendant violated his rights under the ADEA and Title VII;

D. That this court enter a permanent injunction, prohibiting Defendant from engaging in unlawful employment practices in violation of the ADEA and Title VII;

E. That the court award Mr. Linder back pay, including all lost pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

F. That Mr. Linder receive front pay to compensate him for lost future wages and benefits, in lieu of being reinstated to his former position with Defendant at the same pay rate;

G. That the court award Mr. Linder prejudgment interest as required by law;

H. That the court award Mr. Linder compensatory damages for emotional pain and suffering in an amount to be determined by the enlightened conscience of a jury;

I.      That the court award Plaintiff punitive damages sufficient to punish Defendant for its unlawful conduct and deter it from repeating such conduct in the future, as determined by the enlightened conscience of a jury;

J.      That the court award Plaintiff liquidated damages under the ADEA for Defendant's willful violation of the law;

K.      That the court award Plaintiff his costs in this action and reasonable attorneys' fees;

L.      That the court grant to Plaintiff the right to have a trial by jury on all issues triable to a jury; and

M.      That the court grant such additional relief as the court deems proper and just.

Respectfully submitted this 26th day of July 2023.

BUCKLEY BALA WILSON MEW LLP

By: */s/ J. Kyle Brooks*
Edward D. Buckley
Georgia Bar No. 092750
edbuckley@bbwmlaw.com
J. Kyle Brooks
Georgia Bar No. 773561
kbrooks@bbwmlaw.com

600 Peachtree Street NE
Suite 3900
Atlanta, Georgia 30308
Telephone: (404) 781-1100
Facsimile: (404) 781-1101

*Attorneys for Plaintiff*

11